UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WALLY JACQUES SIMON,          )
                              )
          Petitioner,         )
                              )
v.                            )    CIVIL ACTION NO.
                              )    20-10715-DPW
STEVEN SILVA,                 )
Superintendent, MCI Norfolk.  )
                              )
          Respondent.         )

MEMORANDUM AND ORDER
December 9, 2021

Before me is a petition for a writ of habeas corpus under

28 U.S.C. § 2254, arising from the state convictions of Wally

Jacques Simon related to the shooting death of Christopher

Barbaro.  In 2013, a jury convicted Mr. Simon of first-degree

murder on a theory of felony murder, MASS. GEN. LAWS ch. 265, § 1;

armed home invasion, MASS. GEN. LAWS ch. 265, § 18C; armed robbery,

MASS. GEN. LAWS ch. 265, § 17; assault and battery by means of a

dangerous weapon, MASS. GEN. LAWS ch. 265, § 15A(c)(i); and

carrying a firearm without a license, MASS. GEN. LAWS ch. 269, §

10(a).

Mr. Simon sought but was denied a new trial in the

Massachusetts Superior Court.  He pursued a consolidated appeal

of his convictions and the denial of his new trial motion before

the Massachusetts Supreme Judicial Court.  In 2019, the SJC

vacated Mr. Simon's armed robbery conviction but affirmed the

remaining convictions and the denial of his new trial motion. *Commonwealth* v. *Simon*, 120 N.E.3d 679 (Mass. 2019).

Mr. Simon as Petitioner now asserts four grounds for habeas corpus relief: 1) that he was deprived of his Fifth Amendment right against self-incrimination as a result of his counsel's ineffective assistance during a pre-arrest interrogation; 2) that the prosecutor engaged in improper burden shifting by suggesting to the jury that Mr. Simon had an obligation to preserve evidence (a recording of his pre-arrest interrogation); 3) that his right against double jeopardy prevents him from being convicted of felony murder and either or both the Felony murder predicate offenses (armed robbery and armed home invasion) found by the jury; and 4) that the SJC erroneously declined to exercise its extraordinary powers under MASS. GEN. LAWS ch. 278, § 33E to grant Mr. Simon relief.

The Respondent, Mr. Simon's state penal custodian, moves for judgment on the pleadings.  I will grant Respondent's Motion for Judgment on the Pleadings and dismiss Mr. Simon's petition.

## I. BACKGROUND

### A.    *Factual Background*

In the absence of clear and convincing evidence of error, I must defer to the factual determinations of the Massachusetts state courts when reviewing a collateral challenge to a Massachusetts conviction.  28 U.S.C. § 2254(e)(1).  I recite the

facts as stated in the opinion of the SJC; that opinion provides
the last fully developed narrative of factual determinations in
the state courts.  My recitation is "supplemented with other
record facts consistent with the SJC's findings."  *Healy* v.
*Spencer*, 453 F.3d 21, 22 (1st Cir. 2006). *See generally*
*Strickland* v. *Goguen*, 3 F.4th 45, 47–48 (1st Cir. 2021)(relying
on the last reasoned state court decision "in crafting the
factual and procedural narrative.").

1.   The Underlying Deadly Shooting and Identification
     Procedures

Christopher Barbaro was killed on October 24, 2007 when an
assailant broke into his apartment in Winchester, attempted to
steal his cash and rare coin collection, and shot him in the
head.

Around 12:30 A.M. Christopher's brother and upstairs
neighbor, Bryan Barbaro,[1] heard several loud bangs from
Christopher's apartment.  Bryan investigated the noises and
found Christopher on the ground; he had been shot in the head
and was struggling to breathe.  Bryan then encountered a man he
later identified as Mr. Simon attempting to carry a bag of cash
and coins out of Christopher's apartment.  Bryan came "nose to
nose" with Mr. Simon, who was unmasked and wearing a black

---

[1] Because Christopher and Bryan Barbaro share a surname, I will,
as did the SJC in its opinion on the merits, refer to them by
their first names to avoid confusion.

jacket.  Mr. Simon pointed a gun at Bryan and the two struggled.
Mr. Simon shot Bryan in the chest.  During the struggle, Mr.
Simon's bag of coins ripped open and coins spilled out onto the
floor.  Immediately thereafter, Mr. Simon walked out the front
door of the apartment and fled in a dark sport utility vehicle.

When the assailant was gone, Bryan returned to his
apartment to call 911.  He told the dispatcher that he and his
brother had been shot by "Wally," who he described as a black
male of Jamaican descent.  He told the dispatcher he knew Wally
from the local gym and that Wally drove a black sport utility
vehicle.

When police arrived at the scene, they found Christopher
dead of a gunshot wound to the head.  He had been shot with a
.25 caliber bullet and police found numerous other .25 caliber
bullets and shell casings in the apartment.  Coin books and cash
were strewn across the staircase to Christopher's apartment.
Police found a barely conscious Bryan in his upstairs apartment;
Bryan told them "Wally, from the gym did this to me."

Bryan had met Wally Simon at the gym some years prior to
this incident.  Mr. Simon, a carpenter, occasionally worked for
Bryan's construction company.  Bryan introduced Mr. Simon to his
brother, Christopher.  Eventually Mr. Simon became Christopher's
marijuana supplier when Christopher was engaged in selling
marijuana.

Based on Bryan's statements police went to his local gym that morning and inquired about a client named Wally.  Officers obtained Mr. Simon's name and address from the gym and began to surveil him.  Officers followed Mr. Simon from his apartment to his wife's home in Medford, to his children's school, and then into downtown Boston to the office of his attorney, Daniel Solomon.

Police officers approached Mr. Simon immediately upon his arrival at Attorney Solomon's office.  Mr. Simon, on the phone with Attorney Solomon at the time, informed officers that he would not talk to police until his attorney arrived.  When Attorney Solomon came outside, officers told him "[t]here was an incident in Winchester last night, and we want to talk to [Mr. Simon] about it."  Attorney Solomon told them he would meet with his client and inform them if Mr. Simon would be made available to speak with them.

Attorney Solomon and Mr. Simon conferred in Attorney Solomon's office for approximately an hour while police waited at a coffee shop.  During this time period, the officers received a call from other officers who were at the hospital with Bryan Barbaro.  The officers at the hospital reported that Bryan was out of surgery and had identified Mr. Simon as his

assailant in a photographic array.[2]

The officers waiting to speak to Mr. Simon then called Attorney Solomon and again asked to interview Mr. Simon. *Id.* Attorney Solomon invited two officers, Trooper Scott McCormack and Detective Paul DeLuca to his office. There, the officers interviewed Mr. Simon for five to ten minutes.[3] Attorney Solomon was present throughout the interview; there is no evidence that he knew the subject of the officers' investigation at the time.

### 2. The Interrogation

Trooper McCormack first informed Mr. Simon that police were investigating a double shooting and home invasion that had occurred in Winchester the night before. One victim died of his injuries, officers told Mr. Simon, but the other had survived and identified Mr. Simon as the shooter in a photographic array.

---

[2] Bryan was shown an eight-person photo array after surgery. Before he viewed Mr. Simon's photograph, Bryan dismissed six photographs and remarked that a seventh looked similar to the assailant. Then, when viewing the photograph of Mr. Simon, he identified Mr. Simon as the assailant.

[3] The defense moved to suppress Mr. Simon's statements on grounds that the officers did not provide him *Miranda* warnings. The suppression motion judge denied the motion. He found that *Miranda* warnings were rendered unnecessary by counsel's presence throughout the interview. Mr. Simon pursued an interlocutory appeal of this decision to the Supreme Judicial Court. The SJC affirmed the motion judge's decision, holding that "the presence of counsel during police questioning of a suspect, when the suspect has had an opportunity to consult with counsel beforehand, substitutes adequately for the giving of *Miranda* warnings." *Commonwealth* v. *Simon*, 923 N.E.2d 58 (2010), *cert. denied*, 562 U.S. 874 (2010). The motion judge's determination is not challenged in the petition before me.

Mr. Simon went on to make two statements of which the jury was made aware at trial.

- Asked if he knew anyone in Winchester, Mr. Simon informed officers he knew Bryan Barbaro.  Mr. Simon told them he met Bryan years before at the gym.  Mr. Simon said he worked for Bryan on occasion and had been to his home several times.  Mr. Simon also said he knew Bryan's brother, Christopher.

- Mr. Simon then told officers that he had an alibi for the night of the shooting.  Mr. Simon explained that he watched a boxing match at home and then went to his friend's house in Lynn.  Late that night, Mr. Simon said, he returned home to sleep.  Mr. Solomon interjected at this point and advised Mr. Simon not to answer any further questions.

### 3.   The Commonwealth's Case at Trial

The Commonwealth tried Mr. Simon for first-degree murder on a felony murder theory.  According to the Commonwealth, Mr. Simon broke into Christopher's home to rob him of his cash and valuable coin collection; he killed Christopher during the robbery and shot Bryan in order to escape the apartment.  In addition to Mr. Simon's statements to police during his interrogation, the Commonwealth presented the jury with the following evidence.

First, the Commonwealth played the jury Bryan Barbaro's 911 call, during which he identified "Wally" from his local gym as the shooter.  Bryan Barbaro died of natural causes before he could testify at trial, but the Commonwealth read his grand jury testimony into evidence.  *Id.*  Bryan's grand jury testimony was that he had known Mr. Simon for about seven years and that Mr. Simon was working with Christopher to sell marijuana.  Bryan also testified to his memory of the shooting and to recognizing Mr. Simon as the assailant.

Second, Patricia Barbaro, Bryan and Christopher's mother and neighbor, testified to hearing a loud crack around 12:30 A.M. on the night of the shooting.  From her apartment across the street from Christopher's, Patricia Barbaro saw a man in a hooded sweatshirt walk out the front door to Christopher's building and drive away in a dark-colored SUV.  Christopher's downstairs neighbor, Thomas Breen, also testified to hearing a loud noise from upstairs around 12:30 A.M., followed by the sound of someone leaving the apartment building moments later.

Third, the jury was presented with three pieces of physical evidence that, the Commonwealth claimed, tied Mr. Simon to the shooting.  When searching Mr. Simon's home, investigators found a .25 caliber bullet in Mr. Simon's top dresser drawer; this was the same caliber bullet used to shoot Christopher and Bryan.  A search of Mr. Simon's black sport utility vehicle revealed a

1950 quarter on the front passenger's side floor.  This quarter
was consistent with the kind of coins in Christopher's coin
collection.  Investigators searched Mr. Simon's wife's apartment
and found $1,000 in cash on her dresser, which she said belonged
to her.

Fourth, Dolores Mazil and Anunzie Viel testified that Mr.
Simon was not with them in Lynn on the night of the shooting.
Mr. Simon's cell phone records, introduced at trial, showed
several phone calls between Mr. Simon and Ms. Viel the following
morning.  Ms. Viel testified that Mr. Simon never asked her to
provide him a false alibi following the shooting.  The
Commonwealth then introduced her grand jury testimony, as a
prior inconsistent statement, in which Ms. Viel testified that
Mr. Simon called her the morning following the shooting and
asked her to tell police he was with her the night before.

### 4.   The Defense Case

Mr. Simon presented a third-party culprit defense at trial,
arguing that Bryan Barbaro killed his brother and shot himself.
The defense contended that Bryan named Mr. Simon, Christopher's
marijuana dealer, as the shooter to deflect suspicion from
himself.  Defense counsel directed the jury to the lack of
physical and forensic evidence connecting Mr. Simon to the
scene, while Bryan was admittedly present in Christopher's
apartment.  Bryan, the defense argued, had knowledge of

Christopher's coin-collection and was jealous of Christopher's wealth.

Attorney Solomon, who did not appear as trial counsel for Mr. Simon, testified to his recollection of Mr. Simon's interrogation on October 24, 2007.  He offered testimony regarding discrepancies between his memory of Mr. Simon's statements and Trooper McCormack's testimony.  Further, he noted that officers did not record Mr. Simon's interview, referencing police best practices that all suspect interviews be recorded whenever possible.

**B.    *Travel of the Case***

On October 2, 2013, the jury convicted Mr. Simon on all counts, including first-degree felony murder.  The jury specifically convicted Mr. Simon of two predicate felonies: armed robbery and armed home invasion.  Mr. Simon was sentenced to life without the possibility of parole for his murder conviction and received concurrent sentences for his armed robbery and armed home invasion convictions.[4]

Mr. Simon filed a motion for a new trial in 2016 before

---

[4] Mr. Simon was sentenced to twenty to a twenty-five-year term concurrent with his life term on his armed home invasion conviction, and the same concurrent term on his armed robbery conviction.  Mr. Simon received another a four to five-year term for his firearm conviction to be served concurrently with his life term. He was also sentenced to serve twelve to fifteen years from and after his life term on his assault and battery conviction.

directly appealing his convictions to the SJC.  He argued that
Attorney Solomon's advice to speak to police, provided before
Attorney Solomon understood the subject of the police
investigation, violated Mr. Simon's Fifth Amendment right
against self-incrimination, as well as his rights under art. 12
of the Massachusetts Declaration of Rights.[5]  The new trial
motion judge, who had also been the trial judge, denied Mr.
Simon's motion, finding that even if Attorney Solomon's advice
was ineffective, Mr. Simon was not prejudiced because his
statement to police likely would not have influenced the jury's
conclusion.

The SJC then took up Mr. Simon's consolidated appeal of his
convictions and the denial of his new trial motion directly.  On
April 10, 2019, the SJC affirmed the denial of Mr. Simon's new
trial motion, vacated his armed robbery conviction, and affirmed
his remaining convictions.

> 1.   Mr. Simon's Claims on Appeal and the Supreme Judicial
>      Court's Rulings:

Mr. Simon presented four arguments in his consolidated
appeal, none of which the SJC found merited a new trial.  *Id.*
These arguments reappear in the habeas petition before me.

First, Mr. Simon argued that he was deprived of his right

---

[5] Article 12 of the Massachusetts Declaration of Rights provides,
in relevant part, "[n]o subject shall . . . be compelled to
accuse, or furnish evidence against himself."

against self-incrimination provided by Fifth Amendment
constitutional and art. 12 of the Massachusetts Declaration of
Rights when Attorney Solomon rendered ineffective assistance
during Mr. Simon's police interrogation.  The SJC reviewed Mr.
Simon's ineffective assistance claim under the more favorable
standard afforded to those convicted of first-degree murder in
Massachusetts: whether "(1) [] counsel's erroneous legal advice
caused the defendant to give his statement to police; and (2) []
the defendant's statement likely influenced the jury's
conclusion," creating a substantial risk of a miscarriage of
justice.  *Simon*, 120 N.E.3d at 685-86.

    The SJC reaffirmed its holding in *Commonwealth* v. *Celester*,
45 N.E.3d 539 (Mass. 2016), that "a person's right to speak with
counsel is not 'actualize[d] or substantively meaningful if
counsel fails to provide at least minimally competent advice'
and that counsel has 'an obligation at the very least to discuss
with his client the self-incrimination privilege and the
potential consequences of giving a statement to the police.'"
*Simon*, 120 N.E.3d at 679 (quoting *Celester*).  The SJC found that
Attorney Solomon gave erroneous legal advice, but the SJC did
not find that Solomon rendered ineffective assistance.
Ineffective assistance has been defined under Massachusetts law
in *Commonwealth* v. *Saferian*, 315 N.E.2d 878 (Mass. 1974) as
"serious incompetency, inefficiency, or inattention of counsel -

- behavior of counsel falling measurably below that which might
be expected from an ordinary fallible lawyer." *Id.* at 883.  The
SJC applied a more favorable test in Mr. Simon's case because he
was convicted of first-degree murder, a setting in which Mr.
Simon only had to show: "counsel's erroneous legal advice caused
the defendant to give his statement to police; and (2) that the
defendant's statement likely influenced the jury's
conclusion." *Simon*, 120 N.E.3d at 685 (citing *Commonwealth* v.
*Celester*, 45 N.E.3d 539, 555-556 (2016).

Under the SJC's 33E review, reserved for capital cases, the
SJC will consider a defendant's ineffective assistance claim
even if the alleged action by trial counsel does not "constitute
conduct falling measurably below that of an ordinary fallible
lawyer" in order to determine if counsel's advice gave rise to a
substantial risk of a miscarriage of justice.  *Commonwealth* v.
*Williams*, 900 N.E.2d 871, 874 (2009). In this case, the SJC held
only that Mr. Simon "met the first prong" of the more favorable
test which required him to show Attorney Solomon gave erroneous
legal advice.  The SJC did not characterize Mr. Solomon's
service as ineffective at any point in its discussion of this
issue.

Mr. Simon's appeal failed, however, because the SJC found
he had failed to demonstrate a substantial likelihood of a
miscarriage of justice.  The two facts the jury learned from Mr.

Simon's statement, his relationship with the Barbaro brothers and his purported alibi, were established at trial by "independent sources apart from the defendant's statement to police." *Simon*, 120 N.E.3d at 687.

Mr. Simon may have told police of his relationship with Bryan and Christopher Barbaro, but Bryan Barbaro's grand jury testimony and recorded 911 call established the same facts. The jury also learned of Mr. Simon's attempts to construct a false alibi from Ms. Viel's grand jury testimony that Mr. Simon called her the morning after the shooting and asked her to tell police that Mr. Simon was with her that night. Mr. Simon's phone records corroborated that he exchanged multiple calls with Ms. Viel that morning. Mr. Simon's statements to the officers, the SJC found, were cumulative of other independent evidence and did not likely influence the jury's conclusion.

Second, Mr. Simon argued that the Commonwealth engaged in impermissible burden shifting on two occasions, neither of which were objected to at trial: 1) the prosecutor cross-examined Attorney Solomon about his own failure to record Mr. Simon's police interview and 2) the prosecutor capitalized on his cross-examination of Attorney Solomon by arguing in closing that Mr. Simon did not request or want his police interview recorded.

The Supreme Judicial Court found no error in this regard. *Simon*, 120 N.E.3d at 689. Because Mr. Simon's trial counsel

cross-examined testifying police officers extensively on their
failure to record Mr. Simon's interview, the SJC held the
Commonwealth could properly cross-examine Attorney Solomon about
his own recording capabilities in response.  *Id.* at 688.  The
SJC also held that in closing argument, the prosecutor "properly
responded [to arguments raised by the defense] by presenting
reasonable inferences from the evidence, including
justifications that explained why no recording was made."  *Id.*
689 (internal citations omitted).

    Third, Mr. Simon raised a double jeopardy claim based on
his conviction of felony murder and two predicate offenses:
armed robbery and armed home invasion.  The jury found Mr. Simon
guilty of first-degree murder on the sole theory of felony
murder.  The Supreme Judicial Court recognized, and the
Commonwealth conceded, that the predicate felony underlying Mr.
Simon's felony murder conviction was a lesser included offense
of felony murder.  That underlying felony conviction was
therefore "duplicative of a felony-murder conviction, and [] the
underlying felony must accordingly be vacated."  *Id.* at 689.

    The Supreme Judicial Court held that where, as in Mr.
Simon's case, the defendant was convicted of *two* predicate
felonies, the appropriate remedy was to vacate the conviction of
the predicate offense that was most closely tied to the murder,
while leaving the second offense undisturbed.  *Id.* at 690.  In

this case, Mr. Simon's armed robbery conviction was most closely
tied to Christopher's death and the Supreme Judicial Court
vacated that conviction.  Mr. Simon's armed home invasion
conviction, however, was affirmed. *Id.*

Fourth, Mr. Simon argued that his felony murder conviction
should be set aside or reduced in the interest of justice.
Under MASS. GEN. LAWS ch. 278, § 33E, the Supreme Judicial Court
has the power to grant such relief in a capital case for "any []
reason that justice may require."  In Mr. Simon's case, the
Supreme Judicial Court found "no basis to grant extraordinary
relief under G. L. c. 278, § 33E."  *Simon*, 120 N.E.3d at 690.

### 2.  Mr. Simon's Petition for Writ of Habeas Corpus

Mr. Simon raises the four claims he presented to the SJC as
a basis for federal habeas relief.  He first argues, as he did
before the Supreme Judicial Court, that he was deprived of his
Fifth Amendment right to effective assistance of counsel during
his police interrogation.  Mr. Simon specifically contends
before me that the Supreme Judicial Court erred in finding
Attorney Solomon's ineffectiveness was unlikely to have
influenced the jury's conclusion.  Mr. Simon again argues that
the prosecutor impermissibly shifted the burden of proof by
encouraging the jury to infer that Mr. Simon had a duty to
record his own interrogation and produce it as evidence.  Mr.
Simon also repeats his third claim on appeal, that his Fifth

Amendment right against double jeopardy was violated by his
felony murder and predicate felony convictions.  Finally, Mr.
Simon contends the Supreme Judicial Court erred in denying him
statutory relief under Mass. Gen. Laws ch. 278, § 33E.

## II. STANDARD OF REVIEW

In reviewing a petition for federal habeas relief from a
state conviction, I am bound by the Antiterrorism and Effective
Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d).  AEDPA
places a heavy burden on a state defendant seeking a federal
writ of habeas corpus.  If the state appellate court reached a
decision on the merits of the petitioner's federal claim,[6] the
petitioner must show that the state court's adjudication either
"(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or (2)
resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  In
essence, the federal habeas court reviews the state court's
decision only for legal or factual determinations that are

_____

[6] I note that if the petitioner raises a federal claim before the
state court and the state court does not resolve it, "AEDPA
constraints do not apply . . . and a habeas court will afford de
novo review to the claim." *Cooper* v. *Bergeron*, 778 F.3d 294,
299 (1st Cir. 2015).  This refinement does not apply in this
case where the state court resolved all claims pending.

"objectively unreasonable," not merely erroneous. *Williams* v.
*Taylor*, 529 U.S. 362, 409 (2000) ("an unreasonable application
of federal law" requires more than merely "an incorrect
application of federal law."); *Cooper* v. *Bergeron*, 778 F.3d 294,
299 (1st Cir. 2015).

     To succeed under the first prong of the AEDPA, a petitioner
must identify a clearly established federal legal principle
contrary to the state court's decision. *Lockyer* v. *Andrade*, 538
U.S. 63, 71-72 (2003).  "A legal principle is 'clearly
established' only when it is embodied in a *holding* of the
Supreme Court." *Brown* v. *Ruane*, 630 F.3d 62, 67 (1st Cir. 2011)
(emphasis added).  A state court decision is only "contrary to"
a Supreme Court holding when it "substantially differ[s]" from
applicable Supreme Court precedent. *Williams*, 529 U.S. at 405.

     The petitioner may alternatively demonstrate that the state
court unreasonably applied federal law.  A state court will be
found to have unreasonably applied clearly established federal
law only when it "identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably
applies that principle to the facts of the prisoner's case."
*Williams*, 529 U.S. at 413; *Brown*, 630 F.3d at 67.

     A petitioner may also obtain relief by showing that state
court reached an "unreasonable determination of the facts" at
issue in his or her case.  When pursuing this approach, the

petitioner must show clear and convincing evidence of a factual error that entitles him to relief.  28 U.S.C. § 2254(d)(2), (e)(1).

### III. ANALYSIS

As an initial matter, I observe that Mr. Simon has filed his petition without the assistance of counsel.  Under these circumstances, his pleadings are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  *See Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007)(per curiam) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976)); *Hobson* v. *Corsini*, 133 F. Supp. 3d 297, 304 (D. Mass. 2015).  I observe further, however, that Mr. Simon's written pleadings are the same as those fully briefed by able counsel before the SJC, thus, as a practical matter, his contentions have been fully developed by a lawyer on his behalf.

Mr. Simon's petition, relying upon contentions made by prior counsel before the SJC, does not make out a claim for which I may grant him federal habeas corpus relief.

### A.    *Ineffective Assistance of Counsel*

Mr. Simon contends that the Supreme Judicial Court unreasonably applied the teachings of *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984) when holding he was not prejudiced by the admission of his police statement.  *Strickland* directed that a defendant is entitled to a new trial if counsel's performance

"fell below an objective standard of reasonableness," and the defendant suffered prejudice.  *Id.* at 689.  To satisfy *Strickland*'s prejudice prong, the defendant must raise "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Commonwealth contends that because Attorney Solomon rendered his allegedly erroneous advice during Mr. Simon's "pre-indictment custodial interrogation," no federal right to effective assistance of counsel under either the Sixth or the Fifth Amendment was implicated.  Although the Commonwealth's point is not without force, *see Moran* v. *Burbine*, 475 U.S. 412, 430 (1986) (Sixth Amendment right to counsel does not attach during pre-charge interrogation); *Sweeney* v. *Carter*, 361 F.3d 327, 333 (7th Cir. 2004) ("as far as we can tell, the Supreme Court has not . . . set forth a clearly established [Fifth Amendment] right" to counsel in custodial interrogation), I need not address this question, which was not actually addressed by the SJC.  This is because Mr. Simon has not met his burden to show that the SJC was unreasonable in finding that Mr. Simon's police statement was unlikely to have made a difference to the jury.  *See Lang* v. *DeMoura*, 15 F.4th 63, 67-68 (1st Cir. 2021) ("we need not decide" whether counsel's performance was deficient, "we need only hold, under AEDPA, that the Supreme

Judicial Court would hardly have behaved unreasonably" finding a lack of prejudice).

Bearing in mind that "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself," I hold the SJC's determination that Mr. Simon failed to show prejudice not unreasonable. *Harrington* v. *Richter*, 562 U.S. 86, 101 (2011). I find it was not objectively unreasonable for the SJC to conclude that, even had Mr. Simon's police statement been excluded, the jury had been fully exposed to the inculpatory information in his statement through independent evidence.

The jury heard Bryan Barbaro's grand jury testimony, during which he described Mr. Simon's relationship with himself and with Christopher in far greater detail than did Mr. Simon in his police statement. News of Mr. Simon's false alibi also reached the jury independently of his police statement.[7]  On the evidence before me, I cannot say that the Supreme Judicial Court's decision "was so lacking in justification that there was an

_____

[7] I have reviewed Anunzie Viel's trial testimony and the portions of her grand jury testimony introduced at trial.  The jury did, indeed, learn from Ms. Viel's prior inconsistent grand jury testimony that Mr. Simon called her the morning following the shooting and asked her to tell police that Mr. Simon was with Ms. Viel and her girlfriend, Ms. Mazil, the night before.  For her part, Ms. Mazil testified at trial that she was not with Mr. Simon on the night of the shooting.

error well understood and comprehended in existing law beyond
any possibility for fairminded disagreement."  *Harrington*, 562
U.S. at 103.

## B.    *Burden-Shifting Claim*

### 1.   Presentment

Under AEDPA, a state petitioner must first exhaust all of
his state remedies before petitioning for federal relief.  28
U.S.C. § 2254(b)(1)(A), (b)(2).  "A habeas petitioner must have
presented both the factual and legal underpinnings of his claim
to the state courts in order for [me] to find it exhausted."
*Nadworny* v. *Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989).  The
Commonwealth argues that Mr. Simon failed to present his federal
claim of prosecutorial burden-shifting to the Supreme Judicial
Court because his appellate filings did not explicitly invoke
his federal constitutional right to be presumed innocent and to
due process.

A defendant's right to be presumed innocent until proven
guilty is a long-established, "specific right afforded to the
accused under the United States Constitution," *Pagano* v. *Allard*,
218 F. Supp. 2d 26, 34 (D. Mass. 2002) (internal quotations and
citations omitted), one so fundamental as to be "axiomatic and
elementary." *Coffin* v. *United States*, 156 U.S. 432, 454 (1895).
It is well understood that a prosecutor violates that right when
the prosecutor shifts the burden of proof as to any element of

22

the charged offense onto the defendant's shoulders.  "Both state and federal courts have considered such statements made by prosecutors to be erroneous and improper."  *Pagano*, 218 F. Supp. 2d at 33.

Mr. Simon's burden in fairly presenting his burden-shifting claim to the Supreme Judicial Court is not as rigid as the Commonwealth suggests.  The proper inquiry is essentially one of probability: Can it be said the Supreme Judicial Court was "likely alerted to" Mr. Simon's federal claim.  *Nadworny*, 872 F.2d at 1099, 1102.  After reviewing the filings submitted to the SJC in this case, I conclude that the Supreme Judicial Court was likely alerted to Mr. Simon's dual state and federal claim.

First, Mr. Simon's SJC brief cited Supreme Court precedent, *see Coffin*, 156 U.S. 432 (1895), for the proposition that the burden of proof is always on the government because a defendant is presumed to be innocent of all charges unless the government has proven each and every element beyond a reasonable doubt, and the prosecutor cannot claim that the defendant has a burden to prove his innocence.  *See id.* at 460-461.  Mr. Simon also cited several Massachusetts court decisions that themselves explicitly rely on this same clearly established principle of federal law.[8]

---

[8] Mr. Simon's SJC brief cited *Commonwealth* v. *Thomas*, 514 N.E.2d 1309, 1312 (Mass. 1987), which in turn cited *Franklin* v. *Francis*, 471 U.S. 307 (1985) for the federal constitutional proposition that burden-shifting statements "adversely implicate

Where, as here, the petitioner cites to "state court
decisions which rely on federal law or articulation of a state
claim that is, 'as a practical matter, [ ] indistinguishable
from one arising under federal law' [the petitioner] may . . .
satisfy the exhaustion requirement." *Clements* v. *Maloney*, 485
F.3d 158, 162 (1st Cir. 2007) (alterations in original)(quoting
*Nadworny*, 872 F.2d at 1099-1100); *see Sanchez* v. *Roden*, 753 F.3d
279, 294 (1st Cir. 2014).  Mr. Simon's impermissible burden-
shifting claim invoked the federal constitutional right to be
presumed innocent and his filings fairly and properly alerted
the Supreme Judicial Court to the federal nature of his claim.

## 2.   Adequate and Independent State Grounds

The Commonwealth next argues Mr. Simon's claim fails
because the SJC rested its decision on adequate and independent
state grounds, specifically the Massachusetts procedural rule
that a claim not raised at trial is waived on appeal.  *Gunter* v.

---

the defendant's fundamental right to be presumed innocent."
*Thomas*, 514 N.E.2d at 1312.  He also cited the SJC's warnings in
*Commonwealth* v. *Habaerk*, 520 N.E.2d 1303, 1307 (Mass. 1988)
against a prosecutor's use of rhetorical questions that could be
perceived as unconstitutional burden-shifting; the *Habaerk* Court
attributed this proposition to the First Circuit's decision in
*United States* v. *Skandier*, 758 F.2d 43, 44 (1st Cir. 1985).  For
its part, the Commonwealth's brief cited, and the SJC
referenced, *Commonwealth* v. *Tu Trinh*, 940 N.E.2d 871 (Mass.
2011).  In *Tu Trinh*, the SJC explicitly recognized a burden-
shifting claim as a contention of "a violation of the
defendant's due process rights," 940 N.E.2d at 878, citing the
United States Supreme Court's decision in *Francis* v. *Franklin*.

*Maloney*, 291 F.3d 74, 79 (1st Cir. 2002).

If the State court dispenses with a petitioner's federal claim on adequate and independent procedural state ground, federal habeas relief is precluded. *Burks* v. *Dubois*, 55 F.3d 712, 716 (1st Cir. 1995). In such a case, the petitioner can "succeed in his habeas case only by showing cognizable cause for, and cognizable prejudice from, his procedural default or, alternatively, by demonstrating that the federal court's failure to address the claim on habeas review will occasion a miscarriage of justice." *Id.*

Here, I find Mr. Simon's burden-shifting claims were unpreserved at trial and therefore waived. For its part, the SJC reviewed these claims only for a substantial likelihood of a miscarriage of justice. *Simon*, 120 N.E.3d at 688. In reaching my determination, I find the SJC rested its decision on the Massachusetts contemporaneous objection rule and evaluated it only as a matter of Massachusetts state law.

a. *Massachusetts Contemporaneous Objection Rule*

Under Massachusetts law, claims unobjected to at trial are waived on appeal, though appellate courts still consider the merits of the claim in a review for a substantial risk or likelihood of a miscarriage of justice. Mass. R. Crim. P. 22. *See Commonwealth* v. *Ferreira*, 955 N.E.2d 898, 904 (Mass. 2011); *see also Burks*, 55 F.3d at 716. The First Circuit has held

25

"with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts."  *Janosky* v. *St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010) (listing First Circuit cases); *Burks*, 55 F.3d at 716.

A Massachusetts appellate court's review of unpreserved claims under the substantial likelihood of a miscarriage of justice standard does not constitute the state court's waiver of the contemporaneous objection rule.  *Tart* v. *Massachusetts*, 949 F.2d 490, 496 (1st Cir. 1991) ("the mere fact that a state appellate court engages in a discretionary, and necessarily cursory, review under a 'miscarriage of justice' analysis does not in itself indicate that the court has determined to waive an independent state procedural ground.").  The contemporaneous objection rule is only waived when the "court has made it 'reasonably clear that its reasons for affirming a conviction rest upon its view of federal law.'" *Id.* (quoting *Doucette* v. *Vose*, 842 F.2d 538, 540 (1st Cir. 1988)).

The SJC cannot be said to have waived the independent procedural ground of the contemporaneous objection rule here.  The SJC explicitly noted that it reviewed any error in the Commonwealth's cross-examination of Attorney Solomon and in the prosecutor's closing argument for a substantial likelihood of a

26

miscarriage of justice.  *Simon*, 120 N.E.3d at 688.  "This method
of analyzing criminal appeals based on claims defaulted at trial
is not uncommon in Massachusetts appellate courts."  *Rivera* v.
*Bergeron*, 755 F. Supp. 2d 326, 329 (D. Mass. 2010) (internal
citations and quotations omitted).  A limited review of the
petitioner's claim on state law grounds does not demonstrate
that the Supreme Judicial Court rested its decision on its view
of federal law.  *Tart*, 949 F.2d at 496.

       To the extent the SJC can be said to have evaluated Mr.
Simon's burden-shifting claim on its merits, it did so under
state law.  *Simon*, 120 N.E.3d at 688.  The Supreme Judicial
Court relied almost exclusively on *Commonwealth* v.
*DiGiambattista*, 813 N.E.2d 516 (Mass. 2004) to hold that any
reference to the defendant's failure to record his interrogation
was permissible to address reasons why the police failed to make
such a recording.  *Id.*  I will not infer a waiver of the
Massachusetts contemporaneous objection rule solely on this
state-law analysis.  *See Mathews* v. *Silva*, No. 09-cv-12200-FDS,
2020 WL 1703795, at *7 (ECF No. 137)(D. Mass. Apr. 8, 2020)
(citing *Tart*, 949 F.2d at 496).

              b.   *Cause and Prejudice*

       I find no separate cause to lift the procedural bar to
federal habeas relief.  Cause to consider a claim decided on
adequate and independent state procedural grounds must "relate

to an objective factor, external to the defense, that thwarted
(or at least substantially obstructed) the efforts of the
defendant or his counsel" to meet state procedural requirements.
*Burks*, 55 F.3d at 717.  For Mr. Simon, the relevant cause must
relate to defense counsel's failure to object to the
prosecutor's cross-examination and closing argument.  This
species of cause alone does not amount to material cause in this
setting.  *Burks*, 55 F.3d at 717.

Having found no cause excusing Mr. Simon's failure to
object to claimed burden-shifting conduct, I need not address
the prejudice prong in great detail.  *See id.* at 716 n.3.
Nevertheless, I have, in the alternative, reviewed the record
and found the prosecutor's conduct did not constitute actual and
substantial prejudice to Mr. Simon.  The trial judge, in fact,
instructed the jury to weigh evidence of Mr. Simon's alleged
statement "with caution and care" because the Commonwealth
failed to record the interview.  *Simon*, 120 N.E.3d at 871.
Moreover, this is not a case in which failure to examine Mr.
Simon's constitutional claim would result in a fundamental
miscarriage of justice.  I need only reach Mr. Simon's
constitutional claim if I find "a probability that a reasonable
jury would not have convicted but for the constitutional
violation."  *Burks*, 55 F.3d at 718.  Here, I find no probability
that the jury would have reached a different conclusion had the

28

prosecutor forgone questioning Attorney Solomon about his own ability to record Mr. Simon's interview.

### 3.   The Supreme Judicial Court's Analysis

Even if Mr. Simon's claim of burden-shifting were not procedurally defaulted, he has not shown that the Supreme Judicial Court's adjudication of his claim was legally or factually unreasonable.

To be sure, federal law recognizes "the rule against [a prosecutor] telling the jury that the defendant has a burden of proving his innocence." *United States* v. *Roberts*, 119 F.3d 1006, 1015 (1st Cir. 1997); *United States* v. *Diaz-Diaz*, 433 F.3d 128, 135 (1st Cir. 2005).  The SJC did not hold otherwise. Instead, the Supreme Judicial Court held that 1) the prosecutor fairly responded to defense arguments and 2) there was no substantial likelihood that the jury would have misapprehended the Commonwealth's burden where, as in this case, it was properly instructed as to the Commonwealth's burden of proof and also instructed to weigh Mr. Simon's police statement with care and caution.  *Simon*, 120 N.E.3d at 688-670.  The SJC's reasoning was not objectively unreasonable under these circumstances.[9]

---

[9] The First Circuit, applying clearly established federal law, has reached the same conclusion on multiple occasions. *See, e.g.*, *United States* v. *Glover*, 558 F.3d 71, 77 (1st Cir. 2009); *United States* v. *Wilkerson*, 411 F.3d 1, 8 (1st Cir. 2005); *United States* v. *Adams*, 305 F.3d 30, 38 (1st Cir. 2002).

C.   *Double Jeopardy*

The Double Jeopardy clause of the Fifth Amendment protects a defendant from receiving multiple punishments for the same offense.  *Brown* v. *Ohio*, 432 U.S. 161, 165 (1977).  However, "if the legislature decides to impose multiple punishments for the same offense, it may do so" without running afoul of the double jeopardy clause so long as the convictions are not duplicitous. *United States* v. *Patel*, 370 F.3d 108, 114 (1st Cir. 2004).

Mr. Simon seems to argue that his conviction of *any* of the predicate felonies underlying his felony murder conviction violates double jeopardy and the Supreme Judicial Court contradicted clearly established law by holding otherwise. Because I see no contradiction between the Supreme Judicial Court's handling of Mr. Simon's double jeopardy claim and Supreme Court case law, I do not grant Mr. Simon relief on this claim.

The Supreme Court has held that "the crime generally described as felony murder [is not considered] a separate offense distinct from its various elements. Rather, we treat[] a killing in the course of a [predicate felony] as itself a separate statutory offense, and the [predicate felony] as a species of lesser-included offense." *Illinois* v. *Vitale*, 447 U.S. 410, 420 (1980).  Thus, double jeopardy may bar a subsequent prosecution for a specific predicate felony when the

30

defendant has been convicted of felony murder on the basis of that conviction. *Id.* (citing *Harris* v. *Oklahoma*, 433 U.S. 682 (1977) (per curiam)).   Accordingly, the SJC vacated Mr. Simon's conviction and sentence for armed robbery, finding that Mr. Simon's armed robbery conviction was a lesser included offense of his felony murder conviction. *Simon*, 120 N.E.3d at 690.

The only question remaining is whether the Supreme Judicial Court's decision to affirm Mr. Simon's armed home invasion conviction was contrary to clearly established federal law.   Put another way, I must determine if Mr. Simon's armed home invasion conviction was effectively a lesser-included offense of his felony murder conviction as well. *See United States* v. *Medina-Villegas*, 700 F.3d 580, 585 (1st Cir. 2012) (citing *Brown*, 432 U.S. at 169).

The SJC has made clear that the felony underlying a felony murder conviction "is always a lesser included offense" of the murder. *Commonwealth* v. *Gunter*, 692 N.E.2d 515, 527 (Mass. 1998).   To meet the requirements of the Massachusetts felony murder statute, the Commonwealth must prove 1) that a homicide occurred, while 2) the defendant committed or attempted to commit a predicate life felony. Mass. Gen. Laws ch. 265, § 1. Because the elements of the underlying felony conviction are necessary to prove the felony murder, the conviction of the

underlying felony is duplicative of the murder.[10]  *Gunter*, 692 N.E.2d at 527.

Here, however, the jury did not need to find each element of armed home invasion to convict Mr. Simon of felony murder. The jury only had to find that Mr. Simon shot Christopher Barbaro while committing or attempting to commit *at least one* predicate life felony.  Mr. Simon's armed robbery conviction satisfies the predicate felony element of his felony-murder conviction.  Armed home invasion, therefore, is not a necessary element of the felony murder offense and is not duplicative of felony murder.

Although the underlying *conduct* of Mr. Simon's felony murder conviction and armed home invasion conviction do overlap, "[t]he same actions can constitute an offense under two distinct statutes and can be prosecuted separately under each statute as long as the statutes do not define a single offense within the meaning of *Blockburger*.[11]"  *United States* v. *Colon-Osorio*, 10 F.3d 41, 46 (1st Cir. 1993); *Patel*, 370 F.3d at 114.  The SJC's

---

[10] Massachusetts courts apply the familiar test articulated by the United States Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932).  *See Commonwealth* v. *Vick*, 910 N.E.2d 339, 431 (Mass. 2009).  If, to prove one offense the Commonwealth had to prove each element of the other offense, the offenses are duplicative.  *Blockburger*, 284 U.S. at 304.  Each offense must contain an element of proof that the other does not.  *Id.*

[11] *See supra* note 10.

decision to affirm Mr. Simon's armed home invasion conviction while vacating his armed robbery conviction was not objectively unreasonable.  I will not grant Mr. Simon's petition on this claim.

**D.    *Relief Pursuant to § 33E***

Mr. Simon asserts that the SJC abused its discretion by denying him relief pursuant to MASS. GEN. LAWS ch. 278, § 33E. Under Section 33E, the SJC will review a capital defendant's case, in its entirety, in order to consider an issue that raises a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Millien*, 50 N.E.3d 808, 819 n.12 (2016).  If the SJC determines that the verdict was against the law or the weight of the evidence, or if newly discovered evidence or trial errors raise a substantial likelihood of a miscarriage of justice, the SJC may grant the defendant a new trial or reduce the verdict to a lesser included offense.  MASS. GEN. LAWS ch. 278, § 33E.  The Supreme Court has made clear that "[i]nsofar as Petitioner argues that there is an error with respect to Section 33E relief, [a federal court] cannot review that claim."  *Muller* v. *Goguen*, 385 F. Supp. 3d 121, 129 (D. Mass. 2019) (citing *Estelle* v. *McGuire*, 502 U.S. 62, 68 (1991) for the proposition that "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Section 33E presents a state statutory claim

not based in federal law.  It does not separately support federal habeas relief.

## IV. CONCLUSION

For the reasons set forth more fully above, I GRANT Respondent's Motion for Judgment on the Pleadings.

In accordance with First Circuit Local Rule 22.0(a), I hereby deny a certificate of appealability concerning the denial of petitioner's motion under 28 U.S.C. § 2254.  The petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to his claims.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE